Anne B. Anderson, Now Known as Anne B. Pinckard, Appellant, v. George W. Anderson, Appellee.

Gen. No. 42,592.

 Opinion filed June 30, 1943.

PEDEN, RYAN & ANDREAS, of Chicago, for appellant; GERALD RYAN, J. HOMER ANDREAS and WILLIAM E. RADDATZ, all of Chicago, of counsel.

COHON & GOLDSTEIN, of Chicago, for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

On April 26, 1924 Anne B. Anderson married George W. Anderson. They lived and cohabited as husband and wife until February 15, 1928. One child, George W. Anderson, Jr., was born of the marriage. On January 31, 1929 Mrs. Anderson filed a bill for divorce in the superior court of Cook county on the ground that her husband on July 17, 1928 was convicted of the crime of embezzlement and sentenced to imprisonment in the Industrial Reformatory at Chillicothe, Ohio. Substitute service was made on the defendant by publication and delivering to him a copy of the bill of complaint. On May 1, 1929 a decree was entered dissolving the bonds of matrimony between them. The decree did not mention the child of the parties. On May 28, 1941 plaintiff filed a supplemental petition, alleging that the divorce decree made no provision for the support of the child; that at the time of the decree and since then she continued to have the care and custody of the child; that defendant made no provision for and did not support the child; that after the entry of the decree she married Charles B. Pinckard; that on March 31, 1930 a decree was entered in the

county court of Cook county for the adoption by petitioner and her second husband of the child, George W. Anderson, Jr., whose name was therein changed to Frederick B. Pinckard; that thereafter plaintiff and her husband and child moved to Los Angeles, California; that the child was 15 years of age at the time of the filing of the petition, May 28, 1941; that she is the mother of a child by her second marriage; that she "is not being regularly supported by her present husband and is compelled to work as a department store clerk and earns from sixteen to eighteen dollars a week, which is not sufficient to support herself, her minor child by her second marriage and the said George W. Anderson, Jr., also known as Frederick B. Pinckard"; that Frederick B. Pinckard was 15 years old; that he is in school and being cared for by petitioner in her home; that she "does not have funds sufficient to properly support and care for the said George W. Anderson, Jr., also known as Frederick B. Pinckard; that Frederick B. Pinckard, while attending school is endeavoring to earn money running errands after his school work to earn sufficient money to supplement the scanty income of your petitioner, but the said child is unable to earn sufficient to so supplement the income of your petitioner and is greatly undernourished, weak and run down. The present economic condition of your petitioner is such that the said minor child of petitioner and the said George W. Anderson, Jr., also known as Frederick B. Pinckard, is undernourished and has great difficulty in keeping up his school work and completing his education; that said George W. Anderson should provide for the support of the said George W. Anderson, Jr., also known as Frederick B. Pinckard, he being the father of the said George W. Anderson, Jr., also known as Frederick B. Pinckard; that said George W. Anderson returned to the State of Illinois in the year 1935 or thereabout and has been steadily employed; that said George W. An-

derson has remarried but has no children by his second marriage. The said George W. Anderson is actively engaged in business and is possessed of a large estate consisting of securities of various kinds and character. He is employed as a salesman for several manufacturing and distributing companies and earns an income in excess of $7,500 per year. The said George W. Anderson is a well educated man and maintains a large and expensive household and is active socially and is well able to support and provide for the maintenance of the said minor child of petitioner and the said George W. Anderson and is liable under the law to do so. Your petitioner has made repeated requests of the said George W. Anderson that he make some proper and suitable provision for the support and maintenance of the said child of the parties, but the said George W. Anderson refuses so to do.'' The petition prayed that the court determine and order defendant to pay a reasonable sum for the support and maintenance of the minor child, and a further sum as attorney's fees. On June 25, 1941, defendant answered, denying that he ''never made provision for the support'' of the child. He alleged that the child was 16 years of age, denied that plaintiff was not being regularly supported by her husband, denied that she earned only sixteen to eighteen dollars a week; denied that her earnings were insufficient to support herself and her child; denied that she did not have sufficient funds to properly support and care for the minor child; denied that the child was unable to earn sufficient to supplement the income of plaintiff, or that the child was greatly undernourished, weak and run down; denied that the child had great difficulty in keeping up his school work; denied that he, defendant, should provide for the support of the child; denied that he, defendant, had been steadily employed, or that he was engaged in business, or possessed a large estate; denied that he earned in excess of $7,500 per

year, or that he maintained a large and expensive household, or that he was active socially, or that he was well able to provide for the maintenance of the child, or that plaintiff made repeated requests that he make suitable provision for the support and maintenance of the child, or that plaintiff was without means to prosecute her petition, or that she was entitled to a reasonable fee for her attorney. Defendant further represented that the minor was adopted by plaintiff and her husband while defendant was in a penal institution; that the child bears the name of plaintiff's present husband rather than of defendant; that plaintiff and her husband took the child out of the jurisdiction of the court and reside with the child in California, thereby depriving defendant of any possibility of association with or opportunity to cultivate the child from the time the child was 4 years of age; that plaintiff and her husband assured the court at the time the adoption decree was entered that they would assume the burden of support and maintenance of the child, which assurance was one of the controlling factors in causing the court to enter the decree; and that plaintiff and her husband are well able to support and maintain the child. The case was heard by a chancellor in July 1941. The attorneys for the respective parties submitted briefs, but no ruling was made by that chancellor. The case came on for hearing before another chancellor on November 11, 1942. No testimony was heard. The court read the complaint and the answer. The attorney for the plaintiff informed the court that plaintiff's petition alleged that the adoptive father was not supporting and maintaining the child, but that the petition did not allege that the adoptive father was unable to perform this obligation. He also informed the court that the defendant was earning $4,500 a year. Defendant's attorney stated that the facts of the case were set out in the petition and that he was satisfied to have the court rule on the case without the submis-

sion of any evidence. The attorneys argued the law applicable to the facts as stated in the petition. The court then took the briefs which had been submitted to the previous chancellor 18 months previously. At a further hearing on November 24, 1942 he announced that after having studied the briefs he was of the opinion that the prayer of the petition should be denied and that the petition should be dismissed for want of equity.

On December 11, 1942 the court entered an order dismissing the petition for want of equity. The order, in part, reads:

"The petitioner has a child by her second marriage, who is a minor. Petitioner is not being regularly supported by her present husband and is employed as a department store clerk and earns from sixteen to eighteen dollars a week. Said George W. Anderson, Jr., also known as Frederick B. Pinckard, being 16½ years of age and being 15 years of age at the time petition was filed herein, is in attendance at school and is being taken care of by the petitioner in her home. The said George W. Anderson, Jr., also known as Frederick B. Pinckard, while attending school, is earning money running errands after school work. Said George W. Anderson returned to the State of Illinois in the year 1933 and has been steadily employed. Since the filing of the supplemental petition herein, he has left Chicago again and is now a resident of Pittsburgh, Pennsylvania. Defendant has remarried, is employed as a salesman for a manufacturing and distributing company and earns an income of approximately $4500.00 per year. He has not had the privilege of visiting the minor child of the parties hereto and has never seen the minor child since the divorce. No showing has been made that petitioner has made any effort to secure support for the minor child from her present husband, who is the father by adoption. No showing has been made as to what the earnings of the 16½

year old minor child are in work performed before and after school, and that no real necessity has arisen for the defendant to support the minor child."

Plaintiff appeals.

Before considering the law applicable to this case, it will be noted that the parties stipulated that the petition be taken as true. The petition recites that plaintiff "is not being regularly supported by her second husband," that she is a clerk in a department store earning from sixteen to eighteen dollars a week "which is not sufficient to support herself and her minor child by her second marriage" and the minor child of plaintiff and defendant. The petition states further that plaintiff does not have funds sufficient to support the child; that the child runs errands in an endeavor to supplement plaintiff's income, "but is unable to earn enough"; that he is "greatly undernourished, weak and run down and has great difficulty keeping up his school work." The court found that at the time the decree was entered the minor child was 16½ years old. The record does not show the birthday of the child. As the decree was entered on December 11, 1942 we presume that the child is now 17 years of age. The petition alleges that the adoptive father was not supporting the child, but does not allege, and the attorney for plaintiff stated at the hearing, that the adoptive father was unable to support the child. The supplemental petition alleges that plaintiff is not being regularly supported by her second husband. We are left to speculate as to what is meant by the statement that she is "not being regularly supported." A person could be adequately supported although not regularly supported. The question presented by the petition in any event is as to whether the minor child is being supported, not as to whether plaintiff is being supported. The petition is silent as to the occupation of Mr. Pinckard, the second husband and adoptive father,

and as to his resources. We are asked to infer that because plaintiff works as a clerk in a department store receiving wages of sixteen to eighteen dollars a week, the adoptive parents do not have sufficient income to adequately support and maintain the child. We are asked to draw the same inference from the allegation that she does not have sufficient funds to support and maintain the minor child. Even though plaintiff does not have sufficient funds to support the child, the adoptive father could have a sufficient income to support the child. The statement that the minor child runs errands in an endeavor to earn money to supplement plaintiff's income but is unable to earn enough, also leaves out of account the income of Mr. Pinckard. The fact that the minor child is ''greatly undernourished, weak and run down, and has great difficulty in keeping up his school work'' would not necessarily be caused by lack of funds. It is common knowledge that persons in comfortable circumstances become weak and run down. Many children who are well provided for have difficulty in keeping up their school work. At the time of the hearings the attorneys for the respective parties apparently believed that the statement of facts contained in the petition was a sufficient presentation, and that by applying the law thereto a proper decision could be made. The position of the defendant in this court, however, is that the statement in the petition does not make out a case for the plaintiff. It is unfortunate that the facts as to the circumstances of the adoptive parents, particularly the resources and income of Mr. Pinckard, were not presented. It would be desirable also to have information as to the kind of a home in which the child lives, his physical condition and the manner in which he has lived within the last few years, also the physical condition of the adoptive parents. While the parties speak of the facts set out in the petition, as a matter of fact the petition consists of a statement of conclusions as

to the matters of importance on this appeal. We feel, however, that a child's welfare is involved and that the case should not be disposed of without the court going fully into the merits. Under the position taken by the defendant in this court, the proper procedure would be to have moved to dismiss or to strike the petition on the ground that it was insufficient on which to base relief rather than by stipulating on the facts of the case as set forth in the petition. Where a suit is instituted in a court of chancery relative to the person or property of an infant he is treated as the ward of the court and under its special protection. *Swiney v. Womack*, 343 Ill. 278, 287.

In considering this case, it is well to recall the pertinent language of our Supreme Court in *Kelley v. Kelley*, 317 Ill. 104, 110:

"Since the children of divorced parents are often exposed to the mutual animosities and jealousies of their parents and the happiness of the children and their usefulness as citizens are thereby endangered, it is the established policy of the law of this State to regard such children as wards of the court. The nurture and proper training of the children of divorced parents being matters of vital interest to the State as well as to the children themselves, the legislature has provided that the court granting a divorce shall have full and continuing jurisdiction, during the minority of such children, to make from time to time such orders with respect to their care, custody and support as reason and justice shall require. While the marriage relation may be dissolved and the marital rights and duties thereby brought to an end, the relation of parent and child cannot be destroyed. The obligation of the father to support his children begins when the child is born and continues during the minority of the child. The obligation of the father to support his minor child is not affected by the decree granting a divorce, nor by a decree granting the care and custody of his child to

his wife or some other suitable person. (*Plaster v. Plaster*, 47 Ill. 290.) His children are of his blood. It is not their fault that their parents have been divorced. It is their right to be given care by those who brought them into the world until they are old enough to take care of themselves. We entertain no doubt that the court that granted a decree in this case awarding the custody of the child to the mother had authority, upon the presentation of a petition for the purpose, to issue a citation requiring the father to appear and show cause, if any he had, why he should not be required to assist in supporting his minor child. This conclusion finds support in many well considered cases from other jurisdictions. *McFarlane v. McFarlane*, 43 Ore. 477; 73 Pac. 203; *Tobin v. Tobin* (Ind.) 64 N. E. 624; *Spain v. Spain*, 177 Iowa 249, 158 N. W. 529; *Marks v. Marks*, 22 S. D. 453, 118 N. W. 694; *Chambers v Chambers*, 75 Neb. 850, 106 N. W. 993; *Renner v. Renner*, 127 Wis. 371, 106 N. W. 846; *Miles v. Miles*, 65 Kan. 676, 70 Pac. 631.''

While the *Kelley* case did not involve an adoption, it sets forth in clear language the obligations of parents, particularly fathers, to their children. The special jurisdiction of chancery over a child's well-being is not governed by technical rules. It is the duty of the chancellor to protect the child as a ward of the court.

The adoption of one person by another is the creation of an artificial relation between people and is taken from the Roman law, being unknown to the English law. A majority of the States of the Union have enacted statutes of adoption. These statutes are not uniform and the new rights and obligations vary with the jurisdiction. Turning to the Adoption Act of this State, we observe that section 3 (sec. 3, ch. 4, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 19.003]) provides that the decree shall order that from its date ''the child shall, to all legal intents and purposes, be the child of

the petitioner or petitioners.'' Section 8 provides: ''The natural parents of a child so adopted shall be deprived, by the decree, of all legal rights, as respects the child, and the child shall be freed from all obligations of maintenance and obedience as respects such parents.'' Both parties rely on and discuss the case of *Dwyer v. Dwyer,* 366 Ill. 630. In 1927 Frances Dwyer procured a divorce in the superior court from Thomas L. Dwyer on the grounds of desertion. Their minor child was then about three years of age. By the consent of both parties the child was adopted in the county court of Cook county by the maternal grandparents on the day prior to the entry of the divorce decree, which recites the adoption. Plaintiff waived alimony and the decree made no provision therefor, or for the support of the child. The grandfather died in 1931, insolvent, and in 1933 the grandmother remarried and moved to the State of Texas. The child was thereafter supported by plaintiff. In 1934 she adopted the child in the county court, and later, in the same month, filed a petition in the superior court in the case in which the divorce was granted, seeking an order from Thomas L. Dwyer, the natural father of the child, for support for the child and solicitor's fees. His answer claimed nonliability because of the adoption proceedings. The court entered an order on January 28, 1935, requiring him to pay $10 a week for the support of the child and $50 solicitor's fees. He appealed, but the appeal was later dismissed. His petition to vacate the order was denied for want of equity. No appeal was taken from the latter order. In June, following, the defendant made payment of the amount accrued, under a rule to show cause entered in May, and the rule was dismissed, with an order for $75 solicitor's fees. In January 1936 plaintiff filed another petition for a rule to show cause, alleging arrears of $80. Defendant's answer admitted $40 arrearage, but challenged the jurisdiction of the court to enter the order of January 28, 1935. Upon a

hearing, the order adjudging him guilty of contempt was entered, finding the arrearage to be $80, and committing him to jail for not to exceed six months, or until he paid the amount of the arrearage. Defendant's contention was that when his child was adopted by others he was by the terms of the Adoption Act relieved of all duties and obligations to thereafter support it. The contention of the defendant was sustained by the Appellate Court, but rejected by the Supreme Court, which, in affirming the judgment of the superior court, said (633):

"The statute does not provide that an adoption relieves the natural parents of their duty to support their offspring. The only express provision of the statute as to the respective rights and duties of natural parents and their children is found in section 8, which deprives the natural parents of all their legal rights in respect to the child, and frees the child from any obligation to maintain or obey the natural parents. An adoption of a child does not work a complete severance in the relationship between the child and its natural parents. The duty of a parent to support his minor child arises out of the natural relationship, and while that duty may also be imposed upon the adoptive parents by statutory enactment, the natural parent may, if necessity arises, be required to perform that duty. The primary duty of the adoptive parents to support is in derogation of the general law, and it is for that reason that, as to the adopted child, the statute must be strictly construed. (*Keegan v. Geraghty,* 101 Ill. 26.) The statute is not to be construed as relieving the natural parents from all obligation to support their minor children."

It will be observed that in the *Dwyer* case the Supreme Court pointed out that the natural parent may "if necessity arises, be required to perform that duty," and added that the primary duty of the adoptive parents

to support is in derogation of the general law. The Supreme Court used this language deliberately. The primary duty of supporting, caring for and maintaining Frederick B. Pinckard, also known as George W. Anderson, Jr., is on the adoptive parents, Mr. and Mrs. Pinckard. However, the adoption did not relieve the defendant, George W. Anderson, the natural father, from his duty to support his offspring, and "if necessity arises," he may be required to perform that duty. The question presented is whether the necessity to perform his duty of fatherhood arose. In *McNemar v. McNemar*, 137 Ill. App. 504, the court said (507):

". . . The relation of parent and child is not ended by the adoption, but fostered instead, and since the father is primarily liable for the support and care of his own child, we hold that the natural father cannot recover for the care and support of his child while in his own home and custody, against a parent by adoption, in the absence of an express agreement to pay."

While the parties did not present the facts to the chancellor so that he could protect the rights of the child, it appears that the mother was required to work as a clerk and that the boy was required to work after school hours in order to earn sufficient to maintain themselves. It also appears that they were not being regularly supported by Mr. Pinckard. It is conceded that the defendant earns more than $4,500 a year. Regardless of the merits of the dispute between plaintiff and defendant, the child should not suffer and it was the duty of a court of chancery to protect him. The parties are before our courts and the cause of justice would not be served by telling the child to seek a remedy in California. From the record before us we cannot say that the necessity spoken of in the *Dwyer* case has arisen so as to require the defendant to carry out his obligation as the father of the boy. In view of the inadequate presentation of the factual situation, we

are of the opinion that the order should be reversed to give the chancellor an opportunity to ascertain the facts, thus enabling him to determine whether it is necessary for the defendant to fulfill his obligation of fatherhood. We feel that this should be done as the child is a ward of the court and under its protection. Should an order be entered, it should relate back to the time when the motion therefor was made. The child should not be prejudiced because of the delay in passing on the dispute. Accordingly, the order of the superior court of Cook county is reversed and the cause remanded for further proceedings in harmony with these views.

*Reversed and remanded with directions.*

HEBEL and KILEY, JJ., concur.